IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

John Thomas Lewis, )
    Plaintiff, )
    )
v. )   1:16cv835 (CMH/TCB)
    )
Michael Wade, et al., )
    Defendants. )

MEMORANDUM OPINION AND ORDER

John Thomas Lewis, a Virginia inmate proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging that his Eighth Amendment rights were violated by officers at the Henrico County Jail West Facility. On February 1, 2017, defendants Deputy Charles Amoah and Lieutenant Jerry Robinson filed a Motion for Summary Judgment, as well as a memorandum of law and supporting exhibits, wherein plaintiff was given the Notice required by Local Rule 7(K) and the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).[1] Dkt. Nos. 33–34. On May 3, 2017, plaintiff filed a sworn pleading styled "Plaintiff's Objection to Defendant's [sic] Motion for Summary Judgement [sic]" in which he disputes several facts as stated in the Motion for Summary Judgment. Dkt. No. 38. For the following reasons, defendants' Motion for Summary Judgment will be granted.

---

[1] The other named defendant's November 21, 2016, motion to dismiss (Dkt. No. 20) is currently pending before this Court.

## I. Background

The record establishes the following facts.[2] Plaintiff was injured on or about July 9, 2014, after falling from a top bunk at the Henrico County Jail West Facility. Compl. at 14; Dkt. No. 34 at 1-2. At that time, plaintiff was assigned to dayroom 221, cell 10, where he had been assigned since June 23, 2014, along with two other inmates. Dkt. No. 34 at 3 ¶ 6. Each cell housing general population inmates has a top and bottom bunk, and when necessary to accommodate a third inmate, a cot. Id. at 2 ¶ 5. "There is no ladder to the top bunk or rails on the bunk . . . ." Gregory Decl. Dkt. No. 34 Ex. A ¶ 7.

Plaintiff had been assigned a cot due to "a medical detail for a bottom bunk." Compl. at 9 ¶ 10. Only the jail's medical staff may issue "no top bunk" restrictions, Dkt. No. 34 at 4 ¶ 13, and plaintiff contends that he "was given a bottom bunk assignment [from Dr. Dana Vango at Henrico Jail-East] for 90 days from the ending [sic] of May until August 2014." Dkt. No. 38 at 3, 7. Generally, inmates who are provided "no top bunk" restrictions receive a hard copy of a "Henrico County Jail Restriction Instructions" form. See Gregory Decl. Dkt. No. 34 Ex. A ¶ 12.

On July 8, 2014, to alleviate overcrowding in cell 10, which housed three inmates, plaintiff asked defendant Robinson if he could move to cell 12, which housed one inmate. Compl. at 9 ¶ 12. "Lt. Robinson verbally okayed the move and said he would email records the next day to reflect the move, but advised Plaintiff to wait until lockdown at night before moving." Id. at 9-10 ¶ 13. "Plaintiff waited approximately 20 minutes before lock[] down to

---

[2] These facts are taken from the Complaint, (Dkt. No. 1); defendants' Motion for Summary Judgment and supporting documents, (Dkt. Nos. 33–34); and "Plaintiff's Objection to Defendant's [sic] Motion for Summary Judgement [sic]," (Dkt. No. 38). Facts disputed by plaintiff are taken as true to the extent they are not contradicted by the record. Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

move his belongings to cell 12," but after plaintiff completed the move, and while defendant Amoah was performing the "count," defendant Amoah asked plaintiff why he was not in his assigned cell, cell 10. Id. at 10 ¶¶ 14-16. Plaintiff advised defendant Amoah that defendant Robinson had given him permission to move cells, but defendant Amoah "instructed Plaintiff to gather his belongings and move back to cell 10 right then and there." Id. ¶¶ 17-18. As plaintiff returned to cell 10, he advised defendant Robinson that defendant Amoah would not allow him to remain in cell 12, to which defendant Robinson replied, "it was [defendant Amoah's] decision, he . . . was deferring to it, and Plaintiff would have to write classification to get the move officially done." Id. at 10-11 ¶¶ 19-20.

Only personnel in the Henrico County Sheriff's Office's Classification section ("Classifications"), who are privy to inmate information that is used in the assignment process and unavailable to other staff, have the authority to assign inmates to cells; other personnel may not change cell assignments. See Gregory Decl. Dkt. No. 34 Ex. A ¶¶ 8, 9. At the time of plaintiff's injury, neither defendant Amoah nor defendant Robinson was assigned to Classifications. Amoah Decl. Dkt. No. 34 Ex. B ¶¶ 2, 4; Robinson Decl. Dkt. No. 34 Ex. C ¶¶ 2–5, 9. According to plaintiff, jail personnel may change assignments "if it is deemed appropriate an [sic] necessary or for emergency purposes," and the Classifications department is notified thereafter. Dkt. No. 38 at 5. ¶ 7. In any case, if an inmate refuses to abide by his cell assignment, a non-Classifications deputy may place the inmate in holding until Classifications can reassess and reassign the inmate. See Amoah Decl. Dkt. No. 34 Ex. B ¶ 5.

When plaintiff returned to cell 10 after his attempted move, he discovered that the inmate who previously occupied the top bunk "had moved his belongings to the cot." Compl. at 11 ¶ 21. Plaintiff advised defendant Amoah that he had "bottom bunk status and he needed his cot

3

back as he could not climb to the top bunk due to his medical condition," yet Defendant Amoah refused to instruct the inmate on the cot to return to the top bunk. Id. at 11-12 ¶¶ 22, 24. Plaintiff did not obviously satisfy any condition on the Henrico Sheriff's Office's Assessment Protocol: Bottom Bunk Requests used to determine "no top bunk" assignments. See Dkt. No. 34 Ex. D (listing age (greater than 60); musculoskeletal immobility; surgery or major trauma to neck, back, chest, abdomen or extremities within six weeks; documented history of seizure disorder; severe cardiac or pulmonary disease; active detox protocol; and pregnancy). When plaintiff offered to show the defendants his

> bottom bunk pass, in [sic] which stated to them that he had an [sic] could produce, but needed time to retrieve it from his belongings. [sic] They both refused to listen or give him time to produce the documents, knowing full well that the Plaintiff had just moved his belongings from the cot that he was requesting to move back too [sic].

Dkt. No. 38 at 10-11 ¶ 24.

Plaintiff then requested to be taken "to the hole" because he "could not get on the top bunk," he would not "tell another inmate to move," and he would not risk "any further injury to his elbow and his back trying to get on a top bunk that did not have any ladder or railings." Compl. at 12 ¶¶ 25, 28. When defendant Amoah advised plaintiff that he would be given "a charge for disobeying a direct order" if he had to be taken to the "hole," plaintiff "turned to [defendant] Robinson and asked him if he was going to allow [defendant] Amoah to force Plaintiff to the top bunk or be subject to a charge." Id. at 12-13 ¶¶ 29-30. When defendant Robinson told plaintiff to "do as you're told and step in the cell," plaintiff agreed to remain in cell 10. Id. at 13 ¶¶ 30-31. According to plaintiff, defendants Amoah and Robinson "totally disregarded the fact that the inmate [in cell 10] who was assigned to the top bunk had broken his assignment to occupy the Plaintiff's assigned cot." Dkt. No. 38 at 14.

4

When plaintiff attempted to climb onto the top bunk later that evening, "he slipped and fell to the ground, landing on his injured right arm on which he [was wearing a] brace, causing it to be re-injured." Compl. at 14 ¶ 36. The two other inmates in cell 10 eventually helped plaintiff onto the top bunk, where he fell asleep. Id. at 14. ¶ 37. "[J]ust before the breakfast wakeup call, Plaintiff fell off the top bunk while in his sleep, hitting his head on the cot, and landing on his injured arm." Id. Plaintiff could not move, and the inmates in his cell called for the deputy, who alerted the medical officials. Id. at 15 ¶¶ 39-40. Plaintiff was taken to the hospital by ambulance. Id. ¶ 41.

As a result of his fall, plaintiff suffers from anxiety and "continues to suffer nerve damage pain to his neck and back, migrane [sic] headaches, and aggravated nerve pain in his right arm." Id. ¶ 42. On July 9, 2014, plaintiff received a "no top bunk" restriction. Dkt. No. 34 Ex. F. Plaintiff states that he was "provided with [the] bottom bunk detail indefinitely," because his previous accommodation, which was issued "due to problems with his back and nerve damage to his right arm," only covered the end of May through August of 2014. Compl. at 8-9 ¶¶ 8-9. Plaintiff asserts that, prior to his fall, "Dr. Dana [sic] Vango issued him a 90 day bottom bunk pass from 5/29/14-8/29/14" due to his back and neck pain and "nerve damage to his right arm for which he also received a brace." Id. at 9 ¶ 9; Dkt. No. 38 at 7 ¶ 13.

On November 15, 2013, plaintiff was transferred from Pamunkey Regional Jail to Henrico County Jail with no current health problems, and plaintiff's medical records reveal that during his intake evaluation on November 21, 2013, he reported "NO current health problems or medications." Dkt. No. 34 Ex. E (emphasis in original). On December 6, 2013, plaintiff requested "to see the doctor because of chest pain, back and knee pain," but he was a "no show [during] sick call." Id. He received mental health treatment on December 31, 2013, and on

January 4, 2014, he was treated due to complaints of "dry, cracking skin between several toes on his R. foot" and "recurrent discomfort from a L. knee injury in 2012." Id. On March 17, 2014, plaintiff requested to see a doctor concerning "a burning sensation in [his] inner elbow and calf muscle (back left) . . . ." Id. Dr. Vango treated plaintiff that day, and her clinical notes indicate that plaintiff had complained of his right elbow "constantly burning" for "the past few months" and of burning in his left calf as well.[3] Id. Dr. Vango noted "no redness or deformities" and normal range of motion, and she provided plaintiff with a "motrin starter pack" and "muscle rub." Id.

On April 2, 2014, plaintiff completed an "inmate sick call request" stating that he "put in to see the doctor a month ago and [had not] been called yet for problems with elbow an [sic] calve [sic]. Now I have skin irritation and I would like to see the nurse." Id. Plaintiff requested another medical appointment on April 10, 2014, for a "rash and infection," and he was seen that day. Id.

Plaintiff requested treatment again on April 15, 2014, "for medication for [his] skin," and he was subsequently seen on April 17, 2014, "for acne or something to clear up spots on his face from previous acne." Id. On April 29, 2014, plaintiff sought treatment following continued complaints of "left elbow discomfort," which he described as "burning pain;" he further stated that the Motrin had been "ineffective." Id. On April 30, 2014, he requested that his blood pressure "be tested for diabetes and P.D.F." Id.

During her treatment of plaintiff on May 6, 2014, Dr. Vango noted "no obvious deformity to bil[ateral] elbows," and a full range of motion in his neck, elbows, and wrists. Id.

---

[3] Dr. Vango entered her notes one day later, on March 18, 2014.

Dr. Vango ordered further testing, and nursing staff drew plaintiff's blood on May 7, 2014. Id.

The corresponding medical notes contain the following observations from the treating nurse:

> [plaintiff] noticed burning in his bil[ateral] elbows about 3 moths [sic] ago. Reports constant burning to his L elbow. States the R elbow has a burning sensation about once a day for 15 mins. Denies any injuries to his arm or elbow. Denies anything like this before. Denies any weakness in his arms or hands. He works out with push ups, pull ups, dips.

Id. Plaintiff was given a "wrist immobilizer" for his left wrist. Id.

Plaintiff completed another "inmate sick call request" on May 21, 2014, seeking treatment for "pain in [his] back, foot and unresolved issues with [his] elbow." Id. On May 22, 2014, plaintiff

> was seen in sick call . . . for multiple complaints. States that he has a pinched nerve in his elbow and has a carpal splint because keeping his wrist straight helps.[4] States that the elbow still bothers him some and is requesting a refill on Naprosyn. Also c/o chronic back pain since 2002 from a disc injury. Requesting an egg crate mattress, advised that it would likely be denied. IM also c/o pain in his bilateral great toes, R>L. States it is sharp pains in his joints and it started and is worse when he wears the work boots or is on his feet too long. No redness, swelling or abnormality in gait.

Id. Later that day, plaintiff was seen at Spotsylvania Regional Medical Center and diagnosed with acute bronchitis/substance abuse. Id.

On June 5, 2014, plaintiff completed an "inmate sick call request" seeking treatment for "stomach sickness, rash, . . . soreness in gums, [and] sweat[ing] at times." Id. On June 9, 2014, he presented to medical staff with several complaints:

> States that he has a pinched nerve in his elbow and has a carpal splint because keeping his wrist straight helps.[5] He was taking Prednisone. States it helped

---

[4] Plaintiff's medical records do not specify which elbow plaintiff was referring to, but he had previously been given a wrist immobilizer for his left wrist. In addition, when plaintiff was treated at the hospital following his fall on July 9, 2014, he reported nerve damage in his left elbow.

[5] Again, plaintiff's medical records do not specify which elbow plaintiff was referring to, but he had previously been given a wrist immobilizer for his left wrist. In addition, when plaintiff was

7

with his arm but he doesn't think its [sic] completely healed and would like to be seen. He also states for the past 3-4 days he has started breaking out in a sweat for no reason and has not been feeling well lately.

Id. Plaintiff received mental health treatment on June 10, 2014.

On June 17, plaintiff reported to Dr. Vango that "the pain has decreased in his L elbow," and there was "great improvement in his L elbow with the prednisone." Id. Plaintiff made an "inmate sick call request" on July 1, 2014, complaining of "stomach irritation" a "skin infection" and "pain in back and elbow." Id. During sick call on July 3, 2014, plaintiff complained of "back, stomach, and elbow pain;" he was given Tylenol, "per back pain protocol," and informed that he had "already been seen by provider concerning elbow." Id. His treating nurse instructed him to "put in another sick call" if the Tylenol was ineffective. Id.

## II. Standard of Review

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material[,]" and a "genuine" dispute of material fact will be found only when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of proof for all relevant issues and must demonstrate that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

Once a moving party has met its burden, the non-moving party must produce specific facts to generate a disputed issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); see Bell v. Kolongo, No. 1:03CV501 (GBL), 2004 WL 3247156, at *7

---

treated at the hospital following his fall on July 9, 2014, he reported nerve damage in his left elbow.

8

(E.D. Va. Oct. 25, 2004) (quoting Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir. 1993)) ("In a 'summary judgment inquiry[, the Court] scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial.'"), aff'd, 120 F. App'x 985 (4th Cir. 2005). "Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. Unsubstantiated, conclusory claims without evidentiary support are insufficient to defeat a summary judgment motion. Braithwaite v. Hinkle, 752 F. Supp. 2d 692, 694 (E.D. Va. 2010), aff'd, 412 F. App'x 583 (4th Cir. 2011). In other words, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249–50 (internal citations omitted). The court will view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997).

### III. Analysis

To prevail on his Eighth Amendment claim, plaintiff must establish sufficient facts to show that a jail official was deliberately indifferent to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 104–05 (1976); Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). Such a showing requires two distinct elements: (1) a sufficiently serious medical need, see, e.g., Hall v. Holsmith, 340 Fed. App'x 944, 947 & n.3 (4th Cir. 2009) (flu-like symptoms not sufficiently serious); Cooper v. Dyke, 814 F.2d 941, 944–45 (4th Cir. 1987) (intense pain from an untreated bullet wound sufficiently serious); Loe v. Armistead, 582 F.2d 1291, 1296 (4th Cir. 1978) ("excruciating" pain from untreated broken arm sufficiently serious), and (2) a defendant's deliberate indifference to that need. Farmer v. Brennan, 511 U.S. 825, 837

(1994). A defendant acts with deliberate indifference only when he "knows of and disregards an excessive risk to inmate health or safety; [the defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

To sustain his claim past the summary judgment stage, plaintiff must, at minimum, create an issue of material fact concerning whether his stated medical need is objectively serious, i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (quoting Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)). Generally, "[a] medical need serious enough to give rise to an Eighth Amendment claim involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain." Green v. Rubenstein, 644 F. Supp. 2d 723, 740 (S.D. W. Va. 2009); see also McClary v. Fowlkes, No. 1:07CV1080 LO/TCB, 2008 WL 3992637, at *4 (E.D. Va. Aug. 27, 2008) ("Plaintiff has failed to present affidavits or other evidentiary material sufficient to meet his burden on summary judgment that he suffered from a 'serious' medical need, such as a condition for which lack of treatment perpetuates severe pain."), aff'd, 328 F. App'x 275 (4th Cir. 2009).

A review of plaintiff's medical records indicates that his complaints of back pain were intermittent and interspersed with complaints of other ailments, see Dkt. No. 34 Ex. E, and, therefore, insufficient to sustain an Eighth Amendment claim. See Perkins v. Cal. Dept. of Corr. & Rehab., 2010 WL 3853276 at *6 (E.D. Cal. Sept. 30, 2010) (stating that persistent, substantial pain for ten months qualifies as a "serious" medical condition, but mild, intermittent pain does not); Benitez v. Pecenco, No. 92 CIV. 7670 (DC), 1995 WL 444352, at *3 (S.D.N.Y. July 27,

10

1995) (concluding that complaints of back pain, which were only sporadically made and were interspersed with complaints of a sore throat and sore finger, all of which were treated as requested, were not a "serious" medical condition). Plaintiff's complaints of elbow pain, though more consistently voiced, are also insufficient to support a constitutional claim. There is no clinical support for plaintiff's claim of "a pinched nerve in his elbow," or any indication that the burning sensation experienced by plaintiff caused him severe pain or otherwise interfered with his daily activities. Dkt. No. 34 Ex. E. In fact, following several complaints of "burning in his bil[ateral] elbows," plaintiff denied "any weakness in his arms or hands" and acknowledged that he "works out with push ups, pull ups, dips." See id. The clinical findings that plaintiff had full range of motion, normal strength, and normal function, and the absence of complaints of unbearable or debilitating pain, belie plaintiff's contentions that his medical needs were sufficiently serious to support an Eighth Amendment claim. See Williams v. Tomlin, No. 98–1234, 1999 WL 644383, at *1 (6th Cir. Aug. 13, 1999) (finding that prisoner's complaints of a burning sensation and bleeding after applying medicated skin cream to his face was not a serious medical need where nurse noted that the prisoner had no "blistering redness," but merely a few patches of dry skin); Degree v. State Emps., No. C/A 3:102596CMCJRM, 2010 WL 5257230, at *3 (D.S.C. Nov. 8, 2010), report and recommendation adopted, No. C/A 3:102596CMCJRM, 2010 WL 5257229 (D.S.C. Dec. 17, 2010) (concluding that itching and burning of feet, though uncomfortable, did not constitute objectively serious medical need, absent allegations of blisters and unbearable pain and evidence that the condition lasted for a lengthy period of time). Thus, even assuming, without deciding, that defendants acted with deliberate indifference, the

undisputed record establishes that plaintiff was not suffering from a sufficiently serious medical condition, and, therefore, defendants' Motion for Summary Judgment will be granted.[6]

Accordingly, defendants' Motion for Summary Judgment (Dkt. No. 33) is GRANTED, and it is hereby

ORDERED that judgment be and is entered in favor of defendants Lieutenant Jerry Robinson and Deputy Charles Amoah.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to plaintiff and to counsel of record for defendants.

Entered this 2nd day of June 2017.

_____
United States District Judge

Alexandria, Virginia

---

[6] Both defendants argue in the alternative that they should have qualified immunity from liability to plaintiff for the harm plaintiff asserts. Because defendants have established their entitlement to judgment as a matter of law on plaintiff's Eighth Amendment claim, it is unnecessary to address their arguments on the question of qualified immunity.